McCORD, J., Acting Chief Judge.
This is an appeal from an order denying appellants’ motion for summary judgment and injunctive relief. The appeal was taken to the Supreme Court of Florida and was transferred by that court to this court, the Supreme Court finding that the issues involved are matters within the jurisdiction of this court.
By their complaint, appellants contended in the trial court that appellee, the Department of Agriculture and Consumer Services of the State of Florida, was without statutory or constitutional authority to require their trucks to stop at appellee’s road-guard stations for agricultural inspection, alleging their trucks do not carry agricultural products. They sought an injunction to prevent appellee from requiring their trucks to stop. The trial judge, in his order denying appellants’ motion for summary judgment, pointed out that the Supreme Court of Florida in Johnson v. State, Fla., 128 So. 853 (1930), upheld the constitutionality of the citrus inspection code saying:
“The protection of a large industry constituting one of the great sources of the state’s wealth and therefore directly or indirectly affecting the welfare of so great a portion of the population of the state is affected to such an extent by public interest as to be within the police power of the sovereign.”
*375 The trial court then found that the appel-lee’s actions to ascertain what agricultural products, if any, appellants are transporting have been reasonable and no abuse of discretion has been shown. The trial court further pointed out that the agricultural inspection laws are “regulations designed to promote the public health, safety and welfare in order to determine whether there has been compliance with prescribed standards.” The court made the further affirmative finding:
“It is within the police powers of the state to cause to stop for inspection all trucks operating on the public highways.”
The statutes which purportedly authorized appellee to require appellants’ trucks to stop for agricultural inspection are Sections 570.15 and 570.44(3), Florida Statutes. Subsequent to the entry of the trial court’s order appealed from, Section 570.15, Florida Statutes, was amended. This being a suit in which appellants seek prospective relief, we will consider the law as it exists at this time rather than as it existed at the time of the entry of the order appealed from. See Florida East Coast Railway Company v. Rouse, Fla., 194 So.2d 260 (1967); Phillips v. Phillips, Fla. App.(1st), 287 So.2d 149 (1973).
§ 570.44(3), Florida Statutes, relating to the powers and duties of appellee’s Division of Inspection, provides as follows:
“BUREAU OF ROAD GUARDS. — It shall be the duty of this bureau to operate and manage those road guard inspection stations of the state and to perform the general inspection activities relating to the movement of agricultural, horticultural, and livestock products and commodities as directed by the department and the division director.”
§ 570.15, Florida Statutes, 1975, provides in pertinent part as follows:
“(l)(a) The commissioner, assistant commissioner, directors, counsel, experts, chemists, agents, inspectors, road-guard inspection special officers, and other employees and officers of the department shall have full access at all reasonable hours to all:
2 4 * * *
2, * * *
3# * * *
4 * * *
5^ * * *
6. Trucks;
7. Motor vehicles, other than private passenger automobiles with no trailer in tow or any vehicles bearing an RV license tag;
8. Truck and motor vehicle trailers;
9 ^ * *
10. All records pertaining thereto;
used in the production, manufacture, storage, sale, or transportation within the state of any food product; any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department.
(b) If such access be refused by the owner, agent, or manager of such premises or by the driver of such aforesaid vehicle, the inspector or road-guard inspection special officer may apply for a search warrant which shall be obtained as provided by law for the obtaining of search warrants in other cases, or may conduct a search of any of the aforesaid vehicles without a warrant pursuant to s. 933.19.
(c) * * *.
(2) It shall be unlawful for any truck or any truck or motor vehicle trailer to pass any official road-guard inspection *376 station without first stopping for inspection. A violation of this subsection shall constitute a misdemeanor of the second degree, punishable as provided in s. 775.-082 or s. 775.083.”
Appellants’ affidavit in support of their motion for summary judgment stated that their trucks are used to transport apparel, textiles and items related to the manufacture of clothing; that the trucks are never used to transport agricultural, horticultural, or livestock products or other products regulated by appellee. Appellants contend that to require their trucks to stop for inspection' at appellee’s inspection stations is a deprivation of appellants’ right to be free from unreasonable searches and seizures, their right to due process of law, their right to equal protection of the law, their right to privacy and to travel freely on the highways of the United States, as guaranteed by the United States Constitution and the Constitution of Florida. We disagree.
 Appellee has full authority under the police power of the State of Florida to conduct agricultural inspections of the vehicles mentioned in the above statutes provided such inspections are made pursuant to the terms of said statutes. The inspections are necessary in order that appellee may carry out its responsibilities relating to disease control, fruit and vegetable grading and other similar matters required by law, appellee’s regulations and federal marketing orders. Under subsection (2) of section 570.15 above, all trucks and motor vehicle trailers [not limited to those mentioned in subsection (1)] are required to stop at appellee’s road-guard inspection stations for inspection. Unless such a vehicle stops at the station, it cannot be determined by the inspectors whether or not it is being used for transportation of “any food product, any agricultural, horticultural, or livestock product; or any article or product with respect to which any authority is conferred by law on the department.” Upon stopping, the majority of operators of such vehicles will probably have no objection to such an inspection and will consent to same; but as provided in the statute, if access is refused, the vehicle may not be searched without the inspector obtaining a search warrant or without a legal basis for search without a warrant pursuant to established law. Such in no way impairs appellants’ right to be free from unreasonable search and seizure, their right to due process of law, or their right to equal protection of the law. We do not find that it violates any constitutional right of appellant.
From the record it appears that appellee' has a procedure whereby a concern may qualify for a permit through which its trucks, upon stopping, will be given clearance through exhibiting their bills of lading, but appellants have not sought to avail themselves of this procedure.
We have considered the opinion of the United States Court of Appeals, Ninth Circuit, in United States v. Martinez-Fuerte, 514 F.2d 308 (1975), which holds that federal immigration agents cannot constitutionally stop automobiles on the chance of discovering something illegal; that such is a violation of the Fourth Amendment of the Constitution of the United States. Also, in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court said:
“It is quite plain that the Fourth Amendment governs ‘seizures’ of the person which do not eventuate in a trip to the station house and prosecution for crime —‘arrests’ in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person.”
There the court went on to hold that due regard for the practical necessities of law *377 enforcement justifies something less than probable cause for brief informal detention and ruled that a “founded suspicion” is all that is necessary.
As stated by the District Court of Appeal, Fourth District, in Gustafson v. State, Fla.App., 243 So.2d 615; reversed on other grounds, State v. Gustafson, Fla., 258 So.2d 1 (1972); Aff., 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973):
“Florida courts have recognized use of detentions which fall short of technical arrests. Chance v. State, Fla.App.1967, 202 So.2d 825 (investigation of a liquor store robbery); Lowe v. State, Fla.App. 1966, 191 So.2d 303 (investigation of robbery suspects). A license check evidently falls into this category. City of Miami v. Aronovitz, Fla. 1959, 114 So.2d 784.”
The foregoing cases, with the exception of those relating to drivers’ license checks, all dealt with criminal investigations. The inspections authorized by statute in the case sub judice fall in a different category. Agricultural inspections appear to be more nearly akin to drivers’ license checks than detentions for criminal investigations, but we have found no authority and none has been cited to us dealing with agricultural inspections of motor vehicles.
It is our view that the requirement of the foregoing statute that all trucks and trailers stop at the inspection stations of appellee for agricultural inspection is entirely reasonable and is a valid exercise of the police power of the state. The stopping of a vehicle for such purpose is not a search and is not an unreasonable seizure. Only unreasonable searches and seizures are prohibited by the Fourth Amendment.
Affirmed.
SMITH and MILLS, JJT., concur.